















KSR    8/14/02    9:29

3:01-CV-01462   GENZLER V. LONGANBACH

*69*

*O.*

FILED

02 AUG 13 PM 4:06

SOUTHERN DISTRICT OF CALIFORNIA

BY: K.Ridgeway DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GENZLER,<br><br>                                    Plaintiff,<br><br>vs.<br><br>PETER LONGANBACH, an individual;<br>JEFFREY O'BRIEN, an individual;<br>GREGORY THOMPSON, an individual;<br>JAMES PIPPEN, an individual; PAUL<br>PFINGST, an individual; COUNTY OF SAN<br>DIEGO, a governmental entity; SAN DIEGO<br>COUNTY DISTRICT ATTORNEY'S<br>OFFICE, a governmental entity; and DOES 1<br>through 100, inclusive,<br><br>                                    Defendants. | CASE NO. 01CV1462 K JAH<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>LONGANBACH'S MOTION FOR<br>SUMMARY JUDGMENT<br>[44]<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS<br>PFINGST'S, THOMPSON'S,<br>O'BRIEN'S, AND PIPPEN'S JOINT<br>MOTION FOR EARLY SUMMARY<br>JUDGMENT<br>[47] |

The Court considers two motions for summary judgment filed on June 11, 2002, by (i) Deputy District Attorney Peter Longanbach, and (ii) San Diego County District Attorney Paul Pfingst, Deputy District Attorney Gregory Thompson, Deputy District Attorney James Pippen, and Jeffrey O'Brien, an investigator employed by the DA's Office (together, the "Individual Defendants"). Plaintiff opposes both motions. All parties proceed through counsel.

- 1 -

01CV1462K JAH

1   This case arises from an altercation in 1996 between Plaintiff and Dusty Harless, which
2   resulted in Dusty Harless' death. Plaintiff alleges that prosecutorial misconduct lead to his state court
3   conviction for second degree murder on February 10, 1997. Following reversal and retrial, Plaintiff
4   was convicted of involuntary manslaughter on August 25, 2000. Plaintiff sues each Defendant in his
5   individual and official capacity for (i) violations of civil rights under 42 U.S.C. § 1983 and (ii)
6   conspiracy to violate civil rights under 42 U.S.C. § 1983.

7

8   **I.    Applicable Legal Standards**
9   Because Defendants' two separate motions each rely on the same legal standards for summary
10  judgment and absolute prosecutorial immunity, the Court provides those standards at the outset.
11      **A.    Summary Judgment**
12  Rule 56(c) of the Federal Rules of Civil Procedure provides that judgment shall be rendered
13  "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
14  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party
15  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if a dispute over
16  it "might affect the outcome of the suit under governing law . . . ." Anderson v. Liberty Lobby, Inc.,
17  477 U.S. 242, 248 (1986). Summary judgment will not be granted if the dispute is genuine, "that is,
18  if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
19  The movant has the initial burden of demonstrating that summary judgment is proper. See
20  Adickes v. S.H. Kress and Co., 398 U.S. 144, 157 (1970). The burden then shifts to the nonmovant
21  to show that summary judgment is not appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 324
22  (1986). To make such a showing, the nonmovant must go beyond the pleadings to designate specific
23  facts showing that there is a genuine issue for trial. See id. However, in considering this motion, the
24  evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her
25  favor. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).

26

27      **B.    Absolute Prosecutorial Immunity**
28  In Milstein v. Cooley, 257 F.3d 1004 (9th Cir. 2001), the Ninth Circuit surveyed the law

01CV1462K JAH

governing absolute prosecutorial immunity. The Court quotes heavily from the Milstein decision as it provides the controlling Ninth Circuit framework for analyzing Defendants' motions insofar as they are based upon absolute prosecutorial immunity.

According to the Ninth Circuit:

> The text of 42 U.S.C. § 1983, which establishes a federal cause of action for the violation of federal rights by state officials, contains no exceptions. However, the Supreme Court has attributed to the Congress that passed § 1983 knowledge of then-existing common-law immunities, and the lack of an explicit abrogation of these immunities has been interpreted as preserving them.
>
> The immunity of a prosecutor is based upon the same purpose that underlies the immunity of judges and grand jurors acting within the scope of their duties: to protect the judicial process. Specifically, absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits; (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit; and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability . . . .
>
> The seminal case on absolute immunity for prosecutors is Imbler v. Pachtman, where the Supreme Court held that "in initiating a prosecution and in presenting the State's case," the prosecutor is immune from a civil suit for damages under § 1983. This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution. The Court reasoned that these activities are "intimately associated with the judicial phase of the criminal process." The Court acknowledged that at some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator or investigator rather than as an officer of the court . . . .
>
> Additionally, the Court announced a line before which absolute immunity could not apply: "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."

Milstein, 257 F.3d at 1007-1010 (internal citations omitted).

## II.   Discussion of Defendant Longanbach's Motion for Summary Judgment

### A.   Absolute Prosecutorial Immunity

The allegations against Defendant Longanbach upon which he moves for summary judgment fall into the following four categories: (i) hiding and/or withholding evidence (Complaint at ¶¶ 16, 58, 62, 71, 86); (ii) presenting false testimony to the jury (Complaint at ¶¶ 70, 74, 75, 80, 81, 87, 89); (iii) tampering with recorded witness statements and investigative reports (Complaint at ¶¶ 56, 62, 68, 88); and (iv) tampering with and threatening witnesses and suborning perjury (Complaint at ¶¶ 59, 66, 69, 75, 78, 94). Motion at 5-6.

Defendant Longanbach categorically denies each of these allegation. Assuming the allegations

are true, however, he initially presents the summary argument that he is absolutely immune from each of them because they each occurred after Plaintiff had been arrested, and thus probable cause had already been established. Therefore, he argues, the initial investigation into the killing was complete and he was acting as an advocate for the state for which immunity attaches, and not as an investigator or detective for which only qualified immunity attaches. Motion at 6. At the outset, the Court rejects this summary argument. It is true, as quoted above, that the Ninth Circuit rule is that "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Milstein, 257 F.3d at 1010 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993)). However, this holding is not that any activity undertaken by a prosecutor after an arrest based upon probable cause is advocatory and thus protected by absolute immunity. To the contrary, the Ninth Circuit was drawing the line in the reverse, stating that absolute immunity could not be invoked before probable cause was established. Id. The possibility thus exists that some actions undertaken by a prosecutor after the establishment of probable cause could be unprotected by absolute immunity.

This conclusion is consistent with the Supreme Court dicta from Buckley:

> Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity . . . for all actions taken afterwards. Even after that determination . . . a prosecutor may engage in "police investigative work" that is entitled to only qualified immunity. . . ."

Buckley, 509 U.S. at 2616, n.5. The Court therefore rejects Defendant Longanbach's initial summary argument and discusses each category of allegation against Defendant Longanbach in turn.

### 1.   Hiding and/or Withholding Evidence

Defendant Longanbach argues that the following allegations, if proven, would clearly be prosecutorial, not investigatory, in nature, and thus subject to absolute immunity: (i) hiding evidence, Complaint at ¶ 16; (ii) planning to keep exculpatory information, evidence and documents, to which Genzler's attorneys were entitled, from Genzler's attorneys, Complaint at ¶ 58; (iii) hiding or withholding large amounts of potentially exculpatory evidence until the eve of or after the preliminary hearing, Complaint ¶ 62, 71; and (iv) hiding a police incident report relating to an alleged 1993 incident between Plaintiff and a prosecution witness in Plaintiff's first trial which Plaintiff claims would have aided in his defense, Complaint at ¶ 86.

01CV1462K JAH

1   Defendant Longanbach argues that in Imbler v. Pachtman, 424 U.S. 409, 430 (1976), the

2   Supreme Court held that allegations regarding the suppression of exculpatory evidence are subject to

3   absolutely immune as such suppression is "intimately associated with the judicial phase of the criminal

4   process." He similarly argues that the suppression of exculpatory evidence is covered by absolute

5   immunity under Milstein, 257 F.3d at 1008. Upon review of these controlling cases, the Court agrees,

6   and holds that even if proven, Defendant Longanbach is absolutely immune from Plaintiff's

7   allegations that he "hid and/or withheld" evidence, because these allegations are substantively

8   equivalent to the "suppression" of evidence claims held by the Supreme Court to be subject to absolute

9   prosecutorial immunity. In Imbler, the suppressed evidence consisted of exculpatory fingerprint

10   evidence and an exculpatory lie detector test. Imbler, 424 U.S. at 416. Such exculpatory evidence is

11   similar to the exculpatory evidence Plaintiff currently claims was unlawfully hidden or withheld.

12   Moreover, the Ninth Circuit has recently reiterated this aspect of the Imbler holding, stating that under

13   Imbler, absolute prosecutorial immunity covers "the suppression of exculpatory evidence." Milstein,

14   257 F.3d at 1008. Defendant Longanbach's motion for summary judgment as to Plaintiff's claims

15   regarding the hiding and/or withholding of evidence contained in the Complaint at ¶¶ 16, 58, 62, 71,

16   86 is therefore **GRANTED**.

17

18   **2.   Presenting False Testimony to the Jury**

19   Defendant Longanbach argues that Plaintiff's claims that he presented false testimony to the

20   jury, if proven, is covered by absolute immunity under Imbler, 424 U.S. at 416, 431. The specific

21   allegations at issue are that Defendant Longanbach: (i) knew that certain witness testimony as to past

22   aggressive conduct by Dusty Harless would be inculpatory and therefore pressured the witness to

23   provide such testimony even though he knew it was dishonest, Complaint at ¶ 70; (ii) granted a

24   prosecution witness immunity in exchange for testimony he knew was perjured and favorable to the

25   prosecution, which immunity shielded the witness from prosecution for perjury and for future acts of

26   lying on the stand at Plaintiff's trial, Complaint ¶ 74, 75, 80, 81; and (iii) suborned perjured testimony

27   regarding a prior violent act committed by Plaintiff, Complaint at ¶ 87, 89.

28   Defendant Longanbach's argument is correct in that the Supreme Court held in Imbler, 424

01CV1462K JAH

U.S. at 416, that when a witness gives false testimony, absolute immunity attaches to a prosecutor's intentionally and negligently allowing it. Moreover, the Ninth Circuit has recently reiterated this aspect of the Imbler holding, stating that under Imbler, absolute prosecutorial immunity covers "the knowing use of false testimony at trial." Milstein, 257 F.3d at 1008. Defendant Longanbach's motion for summary judgment as to Plaintiff's claims regarding the presentation of false testimony to the jury contained in the Complaint at ¶¶ 70, 74, 75, 80, 81, 87, 89 therefore **GRANTED**.

### 3.    **Tampering with Recorded Witness Statements and Investigative Reports**

Defendant Longanbach argues that Plaintiff's allegations that he tampered with recorded witness statements and investigative reports, if proven, are subject to absolute immunity because he carried out these activities in an advocatory rather than an investigatory role. Specifically, the allegations in question are that Defendant Longanbach: (i) had the District Attorney's investigative report destroyed and redrafted deleting any reference to Dusty Harless' prior physical conflicts or any other potentially exculpatory evidence/information, Complaint at ¶ 56; (ii) had tapes of witness testimony tampered with, Complaint at ¶ 62; and (iii) used his position to remove the only available copies of a certain crime/incident report from the San Diego Police Department which prejudiced Plaintiff, Complaint at ¶ 88. Defendant Longanbach also includes Complaint ¶ 68 in this category, but that paragraph does not allege tampering with recorded statements or investigative reports and is therefore not considered.

Defendant Longanbach relies on Imbler in making this argument. In Imbler, the plaintiff had accused the prosecutor/defendant of using "at trial a police artist's sketch of [the killer] made shortly after the crime and allegedly altered to resemble Imbler more closely after the investigation had focused on him." Imbler, 424 U.S. at 416. The Supreme Court found the prosecutor/defendant absolutely immune from this allegation as the alleged action was "intimately associated with the judicial phase of the criminal process." Id. at 430. Plaintiff argues in opposition that Imbler is factually distinguishable because in "that case the defendant prosecutor did not himself nor did he instruct anyone to manipulate the police artist's sketch. He had no part in the alleged tampering of evidence. Rather, he was accused of using the altered sketch in the trial." Opposition at 14. The

01CV1462K JAH

1   Court agrees with Plaintiff's argument that the Imbler facts were prosecutorial because they related

2   to the prosecutor's actual use of the sketch at trial; those facts do not suggest that a prosecutor who

3   himself tampers with recorded witness statements and investigative reports, or orders such tampering,

4   is entitled to absolute immunity for those actions.  In the absence of a showing of any other law

5   suggesting absolute prosecutorial  immunity for these alleged acts, the Court **DENIES** Defendant

6   Longanbach's motion for summary judgment as to the allegations relating to tampering with recorded

7   witness statements and investigative reports contained in the Complaint at ¶¶ 56, 63, 68 (see note

8   above), and 88, based upon absolute immunity.

9

10          **4.      Tampering with Witnesses and Suborning Perjury**

11          Defendant Longanbach argues that Plaintiff's allegations relating to witness tampering and

12  suborning perjury are subject to absolute prosecutorial immunity.  These allegations differ from those

13  in category (ii), "presenting false testimony to the jury."  Unlike the knowing presentation of false

14  testimony, these allegations involve the actual suborning of false testimony.

15          These allegations are also analytically distinguishable from those in category (iii), "tampering

16  with recorded witness statements and investigative reports," even though both categories seemingly

17  deal with the fabrication of evidence.  The category (iii) allegations dealt with tampering and alteration

18  of physical evidence, a subject about which no case law has been presented.  The category (iv)

19  allegations, with the exception of one, deal with acquiring known false statements from witnesses after

20  probable cause has been established, which has been discussed by the Supreme Court and the Ninth

21  Circuit, as discussed below.

22          The allegations Defendant Longanbach places at issue are as follows: (i) that while

23  investigating the case, he coerced and bullied witnesses into changing their testimony related to what

24  occurred on the night of the incident, Complaint at ¶ 59; (ii) that he suborned perjury by meeting with

25  a witness prior to the preliminary hearing and during the initial investigation of the incident, telling

26  her that in order to secure a conviction she needed to lie about what she saw on the night of the

27  incident and about Mr. Harless' violent past, Complaint at ¶ 66; (iii) that the same witness was told

28  to testify falsely about having actually seen Mr. Harless in prior street or bar fights and about her

01CV1462K JAH

1   knowledge thereof, Complaint at ¶ 69; (iv) that he specifically directed another witness to perjure

2   herself regarding the murder weapon, Complaint at ¶ 75; (v) that the same witness lied because she

3   was threatened by Defendant Longanbach that if she didn't falsely testify, Defendant Longanbach

4   would send her to jail and take away her children, Complaint at ¶ 78; and (vi) that Defendant

5   Longanbach, in an effort to explain the degradation of DNA evidence in blood stains on Plaintiff's

6   shirt, wanted to argue that Plaintiff himself washed the shirt to cover up the crime, and therefore

7   suggested that the investigating police officer leave rain out of the written description of the weather

8   conditions on the evening of the incident, Complaint at ¶ 94.

9         In opposition, Plaintiff argues that in Milstein, 257 F.3d at 1011, the Ninth Circuit held that

10   a prosecutor would not be entitled to absolute immunity if it can be demonstrated that he knowingly

11   obtained false statements for the purpose of prosecution.  In so holding, the Ninth Circuit stated that

12   absolute immunity does not attach to allegations that prosecutors knowingly *obtained* false statements

13   for the purpose of prosection.  Id.  The Ninth Circuit analogized from the Supreme Court's holding

14   in Buckley, reasoning that just as the Supreme Court held that shopping for a dubious expert opinion

15   is fabricating evidence unprotected by absolute immunity, so is acquiring known false statements from

16   a witness for use in a prosecution.  Id.  Plaintiff asks this Court to similarly analogize that the acts he

17   alleges of suborning perjury are akin to fabricating evidence, unprotected by absolute immunity.

18         The Court recognizes the similarities of the allegations.  However, the Court cannot ignore that

19   the subject activities in both Milstein and Buckley occurred well before the empaneling of a grand

20   jury, and thus well before probable cause had been established, and that both the Milstein and Buckley

21   courts relied heavily on such circumstance in characterizing the actions as investigatory and in denying

22   absolute immunity for those claims.  Milstein, 257 F.3d at 1011 and Buckley, 509 U.S. at 275-76

23   (prosecutor's fabrication of evidence occurred during the preliminary investigation of an unsolved

24   crime).  Here, only allegation (ii), Complaint ¶ 66, specifically avers that the suborning of perjury

25   occurred "prior to the preliminary hearing."  Thus, the acts alleged in ¶ 66 occurred prior to the

26   establishment of probable cause and are not subject to absolute immunity.

27       · Each of the other allegations in this category appears to relate to actions which occurred once

28   the investigative detective work was done, probable cause was established, and Defendant Longanbach

01CV1462K JAH

1   was preparing for trial. The Court therefore holds that absolute immunity attaches to those allegations

2   in this category which occurred once probable cause had been established and **GRANTS** Defendant

3   Longanbach's motion for summary judgment as to the allegations regarding suborned perjury

4   contained in the Complaint at ¶¶ 59, 69, 75, 78, 94. However, the Court **DENIES** summary judgment

5   on absolute immunity grounds as to the allegations contained in the Complaint at ¶ 66.

6

7       **B.    Genuine Issue as to Any Material Fact**

8           Defendant Longanbach alternatively argues that regardless of whether he is entitled to absolute

9   immunity, Plaintiff is in any case unable to provide any evidence to support his claims of wrongdoing

10  and summary judgment must therefore be granted in his favor. Motion at 10. Because the Court

11  grants Defendant Longanbach's motion as to Plaintiff's allegations under categories one, two and four,

12  above, with the exception of the allegations contained in the Complaint at ¶ 66, the Court discusses

13  summary judgment only as to the allegations under category three and Complaint ¶ 66.

14          For purposes of summary judgment, Defendant Longanbach may meet his burden of showing

15  the absence of a genuine issue of material fact by showing to the district court that there is an absence

16  of evidence to support the nonmovant's case. <u>Fairbanks v. Wunderman Cato Johnson</u>, 212 F.3d 528,

17  531 (9th Cir. 2000) (*citing* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). "Once the moving

18  party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings

19  and identify facts which show a genuine issue for trial. <u>Id.</u> (internal citations omitted). To this end,

20  Defendant Longanbach simply argues that Plaintiff has no evidence, and that no evidence exists, to

21  support the following three allegations:

22

23       **1.     Complaint ¶ 56**

24          This paragraph and those around it allege that Longanbach ordered O'Brien to destroy his

25  initial investigatory report and redraft it deleting any reference to Mr. Harless' prior physical conflicts

26  or any other potentially exculpatory evidence or information. In opposition to Defendant

27  Longanbach's assertion that no evidence exists to support this allegation, Plaintiff argues that

28  "Longanbach ordered O'Brien to destroy the report and redraft it deleting any reference to prior

01CV1462K JAH

1  physical conflicts or any other potentially exculpatory evidence/information. . . . O'Brien did as he

2  was told, later stating that he works for Longanbach and 'my job is to do what he tells him to do.'"

3  Opposition at 5.  In support of these factual assertions, Plaintiff relies upon his statement of disputed

4  material fact ("DMF"), ¶¶ 20-21.

5        Those paragraphs refer to case notes prepared by another District Attorney Office employee,

6  Rebecca Blair-Hartunian, which state that when she expressed surprise to O'Brien upon hearing him

7  speak about the subject exculpatory evidence/information, "O'Brien replied that [Longanbach] had

8  told him not to put it into the report."  Exhibit 12 at 100118.  Although this information appears to

9  raise a genuine issue of triable fact as to the subject report, and might normally be admissible into

10  evidence as an admission against penal interest, Defendant Longanbach objects on evidentiary ground

11  to the Blair-Hartunian notes pursuant to Fed.R.Evid. 801 & 802 (Hearsay), 805 (Hearsay within

12  Hearsay), and 901 (Authentication).  The Court agrees with the objection based upon Rule 901

13  because Plaintiff provides no authentication whatsoever of the purported case notes.  The Court

14  therefore **GRANTS** Defendant Longanbach's evidentiary objections to this exhibit and **GRANTS** his

15  motion for summary judgment as to Plaintiff's claims regarding the subject report.

16

17        **2.**      **Complaint ¶ 63**

18        This paragraph and those around it allege that a tape of witness testimony had been tampered

19  with by Defendants Longanbach and O'Brien.  In opposition to Defendant Longanbach's assertion that

20  no evidence exists to support this allegation, Plaintiff argues that "Longanbach and O'Brien received

21  the tape shortly after it was created - and now the first half of it was missing."  Opposition at 7.  Here,

22  Plaintiff relies on DMF ¶ 27, which cites to Plaintiff's exhibits 35, 40, 41 and 42.  Each of these

23  paragraphs provides testimony or declarations that there was a tape recorder present at the subject

24  witness interview, and that it appeared that the interviewing detective pressed the record button when

25  he began the interview, and flipped the tape during the interview.  However, none of this evidence,

26  some of which Defendant Longanbach objects to, provides any evidence that either Defendant

27  Longanbach or O'Brien erased the tape.  The Court therefore **GRANTS** Defendant Longanbach's

28  motion for summary judgment as to the allegations relating to the cassette tape.

01CV1462K JAH

### 3.   Complaint ¶ 66

1
2        This paragraph alleges that Defendant Longanbach suborned perjury by meeting with a witness
3   prior to the preliminary hearing, telling her that in order to secure a conviction she needed to lie about
4   what she saw on the night of the incident and about Mr. Harless' violent past.  In opposition to
5   Defendant Longanbach's assertion that no evidence exists to support this allegation, Plaintiff relies
6   on DMF ¶ 28, which purports to summarize the evidence offered in support of his allegation that
7   Defendant Longanbach coerced her into committing perjury.  This evidence consists largely of a
8   transcript of the sworn testimony of the subject witness concerning her experience with Defendants
9   Longanbach and O'Brien prior to the preliminary hearing.  The testimony includes various statements
10  that she felt pressured by these Defendants, as well as by the victim's family, to lie about what she saw
11  on the night of the incident and about Mr. Harless' violent past.  The Court finds that this evidence is
12  a sufficient showing of fact to raise a genuine issue for trial, and therefore **DENIES** Defendant
13  Longanbach's motion for summary judgment as to the allegations contained in the Complaint at ¶ 66,
14  relating to Defendants Longanbach and O'Brien having unlawfully coerced the witness into testifying
15  falsely prior to the preliminary hearing.

16
### 4.   Complaint ¶ 88
17
18       This paragraph and those around it allege that during the 1996 trial, the defense (Plaintiff
19  herein) tried to subpoena a police report (the "Belsan" report) from the San Diego Police Department
20  concerning Plaintiff, which report would have weakened certain prosecution testimony regarding an
21  alleged past violent act committed by Plaintiff.  Plaintiff alleges that in response to the subpoena, the
22  defense received a Certification of No Records, and that therefore Longanbach and O'Brien used their
23  positions to remove the only available copies of a past incident report involving Plaintiff during his
24  first trial, thereby prejudicing him and preventing him from obtaining a fair trial.
25       In opposition to Defendant Longanbach's assertion that no evidence exists to support this
26  allegation, Plaintiff argues that the report in question "was eventually disclosed to Genzler by the
27  AGO.  That document contains a fax confirmation line which indicates that the report was faxed to
28  the 8th floor of the Hall of Justice, on June 4, 1996." Opposition at 8.  Plaintiff relies upon DMF ¶

1  44 which references his Exhibits 52 and 74. These exhibits, which Defendant Longanbach objects to,

2  would demonstrate that the subject report might have been faxed to Defendant O'Brien during the

3  1996 proceeding, and that the report existed during the 1999 proceeding. Assuming these exhibits

4  could withstand Defendant Longanbach's objections, they do not provide evidence that Defendants

5  Longanbach or O'Brien "removed the only available copy" of the report. If O'Brien received a fax

6  of the report, an original must have existed as well. The Court therefore **GRANTS** Defendant

7  Longanbach's motion for summary judgment as to the allegations regarding the "Belsan" report.

8

9  **III.    Discussion of Individual Defendants' Motion for Summary Judgment**

10         In contrast to Defendant Longanbach's motion, the memorandum in support of the Individual

11  Defendants' motion is not specific as to which of Plaintiff's allegations they move for summary

12  judgment, nor as to the specific grounds upon which they move as to each challenged allegation. The

13  Individual Defendants appear to move initially for "dismissal based on absolute or, alternatively,

14  qualified immunity from liability in their individual capacities." Motion at 1. However, despite their

15  broad request for "dismissal" on summary judgment, as best as the Court can ascertain from the

16  pleadings, the Individual Defendants move for summary judgment based upon immunity only as it

17  applies to the allegations against them contained in the Complaint at ¶¶ 52 through 94. Motion at 8.

18  Upon examination of those paragraphs, the Court discerns 12 paragraphs which make specific

19  allegations against Defendant O'Brien (Complaint at ¶¶ 57, 58, 59, 61, 64, 66, 70, 74, 83, 84, 88) and

20  three paragraphs which make specific allegations against the other Individual Defendants (Complaint

21  at ¶¶ 74, 81, 82). The Individual Defendants alternatively ask for summary adjudication of a list of

22  44 facts contained in their Notice of Motion at p.2-5 which they allege without any argument

23  whatsoever are without substantial controversy. Motion at 2.

24         The Court will first discuss the Individual Defendants' immunity arguments as they apply to

25  the specified allegations, and will then address their alternative request for adjudication of facts

26  without substantial controversy.

27  //

28  //

- 12 -

1.     **Specific Allegations Against Defendant O'Brien**

The allegations at issue against Defendant O'Brien can be broken down into the same categories as those described above:  (i) hiding and/or withholding evidence (Complaint at ¶¶ 58, 61); (ii) presenting false testimony to the jury (Complaint at ¶¶ 70, 74,  83, 84); (iii) tampering with recorded witness statements and investigative reports (Complaint at ¶¶ 57, 58, 64, 88); and (iv) tampering with and threatening witnesses and suborning perjury (Complaint at ¶¶ 59, 66, 83, 84).

Each of these allegations is discussed above.  The sole question on this issue is whether absolute immunity as applied to Defendant O'Brien, an investigator employed by the District Attorney's office, is coextensive with its application to Defendant Longanbach.  The Individual Defendants provide little legal argument on this point.  They accurately state that "[o]f the four [Individual Defendants], only one, O'Brien, personally participated in [Plaintiff's] prosecution," and that "[i]nvestigators, like prosecutors and others helping to present the state's case, are entitled to prosecutorial immunity when engaged in functions intimately associated with the judicial phase of the criminal process."  See Cooper v. Parrish, 203 F.3d 937, 950 (6th Cir. 2000)."  Motion at 13.

Plaintiff's opposition is similarly devoid of persuasive argument on this point.  Plaintiff's sole theory is that Defendant O'Brien should not be vested with absolute prosecutorial immunity for acts which disqualify Defendant Longanbach from such immunity.  Insofar as the Court holds that those actions alleged to have been undertaken by Defendant Longanbach in categories one, two and four are protected by absolute immunity, this argument is without merit.  The argument actually urges the Court to apply the same absolute immunity argument to Defendant O'Brien as it did to Defendant Longanbach.  The Court will do so.  Simply because Defendant O'Brien is labeled an "investigator" does not mean that his actions, allegedly taken pursuant to the direct orders of prosecutor Longanbach, are de facto "investigatory" in nature.  On the contrary, logic dictates that because the actions are identical to those alleged against Defendant Longanbach the Court should apply its holding equally. The Court therefore **GRANTS** Defendant O'Brien's motion as to the allegations listed above under categories one, two and four, with the exception of the allegations contained in the Complaint at ¶ 66, and **GRANTS** Defendant O'Brien's motion for summary judgment as to the allegations under category three as discussed above.

01CV1462K JAH

### 2.   Specific Allegations Against Other Individual Defendants

The remaining Individual Defendants move for summary judgment upon the allegations contained in the Complaint at ¶¶ 74, 81, 82.  Those allegations are that Defendants Pfingst, Thompson and Pippen, who supervised Defendant Longanbach but were allegedly not directly involved in Plaintiff's prosecution: (i) knew that Defendant Longanbach granted a prosecution witness immunity in exchange for perjured testimony favorable to the prosecution, which immunity shielded the witness from prosecution for perjury and for future acts of lying on the stand at Plaintiff's trial, Complaint ¶ 74; (ii) had been promised by Defendant Longanbach that he would secure a conviction, Complaint at ¶ 81; and (iii) were aware of and condoned Defendant Longanbach's ploy to get Plaintiff's attorney to recuse himself, complaint at ¶ 82.  To their detriment, Defendants Pfingst, Thompson and Pippen offer absolutely no argument or legal authority to support the proposition that absolute prosecutorial immunity applies to supervisors in the prosecutor's office for the alleged acts of a prosecutor.  They similarly neglect to provide any particularized argument or legal authority as to how the Court should apply witness immunity or qualified immunity to them in their supervisory role.  Because they have failed to provide any argument or authority on these dispositive issues, their motions are **DENIED**.

### 3.   Adjudication of Fact Without Substantial Controversy

Similarly, because (i) the Individual Defendants provide absolutely no argument in support of their request for summary adjudication, instead simply listing 44 facts and alleging they are without substantial controversy, and (ii) for purposes of summary judgment, they have the initial burden of showing the Court that there is an absence of evidence to support the nonmovant's case and have failed to meet this burden, (iii) the Court **DENIES** their motion for summary adjudication as to their list of 44 alleged facts.

//

//

01CV1462K JAH

## IV.   Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

<u>8/13/02</u>
**Date**

Judge Judith N. Keep
United States District Court
Southern District of California

CC:   ALL PARTIES
      MAGISTRATE JUDGE JOHN A. HOUSTON

01CV1462K JAH