2006 OCT -6  AM 8: 31

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GENZLER,<br><br>                           Plaintiff,<br>vs.<br><br>PETER LONGANBACH, an individual;<br>JEFFREY O'BRIEN; an individual;<br>GREGORY THOMPSON, an individual;<br>JAMES PIPPEN; an individual; PAUL<br>PFINGST, an individual; COUNTY OF<br>SAN DIEGO, a governmental entity;<br>SAN DIEGO COUNTY DISTRICT<br>ATTORNEY'S OFFICE, a governmental<br>entity; and DOES 1 through 100, inclusive,<br><br>                        Defendants. | CASE NO. 01CV1462-LAB (RBB)<br><br>**ORDER DECIDING MOTIONS *IN LIMINE***<br><br>[Dkt Nos. 182-185, 186-196, 204-210, 219-248] |

This matter came before the court on September14, 2006 for hearing of the parties' Motions *In Limine* ("MIL") in this 42 U.S.C. § 1983 action. Plaintiff David Genzler ("Genzler") alleges the remaining defendants (the County of San Diego and three of its supervisory employees) (collectively, "Defendants") caused a violation of his constitutional rights associated with his 1996 conviction for the second-degree murder of Dusty Harless. Eugene Iredale, Esq. and Patrick Hosey, Esq. appeared for Genzler. Morris Hill, Esq. appeared for Defendants. Patrick Swan Edward P. Swan, Esq. was present. For the reasons discussed on the record, the court rules on the MIL as follows.

01CV1462

1  I.    **MOTIONS IN LIMINE**

2      A.    **Superseded  And Moot MIL**

3          Genzler's four (4) MIL filed August 25, 2006 (Dkt Nos. 182 through 185) are **DENIED AS**

4  **MOOT**, as included in or superseded by his subsequent filing on September 6, 2006 of seven (7) MIL

5  (Dkt Nos. 204-210).  Former defendant Longanbach's eleven (11) MIL filed August 25, 2006 (Dkt

6  Nos. 186 through 196), in which former defendant O'Brien joined (Dkt No. 199), are **DENIED AS**

7  **MOOT**, in consideration of the subsequent settlement and dismissal of those two defendants.  The

8  entity and supervisory defendants have filed twenty-one (21) MIL.  Dkt Nos. 219-248.

9      B.    **Plaintiff's MIL**

10          1.    **MIL No. 1: To Exclude Irrelevant Evidence Of Crime Scene Description,**
                 **Photographs And Weapon**

11

12          Genzler seeks to preclude any witness, other than Sky Flanders, from testifying about facts or

13  circumstances at the crime scene.  He argues evidence depicting the crime scene or weapon or similar

14  evidence or demonstrations associated with the underlying killing is irrelevant under Federal Rules

15  of Evidence ("Rule") 401- 402 and inflammatory or unduly prejudicial to plaintiff under Rule 403

16  while lacking probative value of any issue material to this case.  He contends the "underlying facts"

17  consist of a "chance meeting between David Genzler and Dusty Harless that escalated into a street

18  fight wherein Harless was unfortunately killed."  MIL 2:11-13.  He argues the only issue presented in

19  this case "is whether Defendants Longanbach and O'Brien manipulated evidence and/or witnesses in

20  the underlying case and, if so, whether they did so in their investigatory roles or in a purely advocacy

21  role" (MIL 5:25-27), although that statement of the case appears to be left over from a period before

22  Longanbach and O'Brien settled with Genzler and were dismissed as parties.

23          Defendants oppose the motion on grounds Scott Davis was Genzler's "other victim," and his

24  version of events is inconsistent with Genzler's version.  They contend that granting the MIL would

25  bar any version of the killing other than Genzler's own version, because they represent Flanders "will

26  testify she did not see the killing."  Opp. to MIL No. 1, 2:12-16.  Defendants argue the evidence is both

27  relevant and probative of a central issue in the case, *viz.* whether deliberately fabricated false evidence

28  was used to convict Genzler.  Flanders changed her story of what she saw between her description of

the incident to police at the time and her preliminary hearing testimony.  At the preliminary hearing,

1  and at both trials, she testified she remembered little of the actual fight because, among other things,

2  she was distracted by the arrival of Scott Davis.  They argue accordingly that if her initial statement

3  was untrue, but her later testimony was true, Genzler cannot prevail on his "deliberately false and

4  fabricated false evidence" claim, and the jury can only make that determination if plaintiff can

5  establish the truth is something else.  They contend they have the right to offer evidence about what

6  really happened the night of the stabbing, including the subject matter of this MIL.  Opp. 5:22-15.

7         The court finds the propriety of admitting such evidence will depend on the context in which

8  it is proffered, a decision that cannot be made in advance of trial.  Accordingly, the court conditionally

9  grants the MIL, but **RESERVES** final ruling until the issue arises in context at trial.

10              **2.    MIL No. 2: To Exclude Irrelevant Evidence Of Autopsy Photographs And
                        The Medical Examiner's Investigative Report**

11

12         Genzler moves to exclude this evidence or mention of it as irrelevant, without probative value,

13  and unfairly prejudicial to him under Rules 401 and 403.  He "believes that **Defendants Longanbach**

14  **and O'Brien** will attempt to entirely retry the events of April 18, 1996 in an attempt to inflame the

15  jury" against him.  MIL 4:18-19 (emphasis added).  Genzler asserts the same relevance and prejudice

16  arguments as with his MIL No. 1.  However, Longanbach and O'Brien are now out of the case.

17         Defendants oppose MIL No. 2 on grounds the evidence Genzler seeks to exclude is the same

18  evidence used to convict him of murder.  If he tries to prove or suggest he was improperly convicted

19  of murder, "the jury is entitled to know why that happened, and to make that assessment, the jury needs

20  the evidence the earlier jury used as its basis for the murder conviction.  Opp. 2:15-18.  As with the

21  MIL No. 1 evidence, this evidence can support witness Davis' version of events.  "The best way to

22  determine if Ms. Flanders lied is to examine the physical evidence to see which version of testimony

23  it supports."  Opp. 2:22-24.

24         To the extent the extent MIL No. 2 is facially directed toward the dismissed "prosecutorial

25  defendants" Longanbach and O'Brien, it is **DENIED AS MOOT**.  The court will not permit the parties

26  to retry the underlying homicide case.  As with MIL No. 1, the court finds the propriety of admitting

27  evidence forming the subject matter of MIL No. 2 will depend on the context in which it is proffered,

28  a decision that cannot be made in advance of trial.  Accordingly, the court conditionally grants the

   MIL, but **RESERVES** final ruling until the issue arises in context at trial.

01CV1462

3.   **MIL No. 3:  To Exclude Reference To Plaintiff's Juvenile Record And/Or Juvenile Conduct**

Genzler seeks to exclude reference to his juvenile record or juvenile conduct as irrelevant under Rule 401, as improper character evidence under Rules 404 and 405, and as unfairly prejudicial without probative value under Rule 403.  MIL 3:1-5.  He again believes **"Defendants Longanbach and O'Brien** will attempt to entirely retry the events of April 18, 1996 in an attempt to inflame the jury against" him by using evidence of his juvenile record or conduct.  MIL 4:16-19 (emphasis added).  However, Longanbach and O'Brien are now out of the case.

Defendants oppose exclusion of that evidence, citing Genzler's allegation that "the **prosecutorial defendants**" went to "extraordinary lengths . . . to ensure that they obtained a conviction for murder. . . ."  Opp. 2:12-15 (emphasis added).  They argue "if plaintiff is allowed to argue or try to prove he was improperly convicted of murder, the jury is entitled to know why that happened, and to make that assessment," and will need "the evidence the earlier jury used as its basis for the murder convictions."  Opp. 2:12-18.  They also contend "[m]uch of the evidence plaintiff wants excluded is relevant to plaintiff's damages, such as his juvenile crimes and prior acts of violence."  Opp. 2:7-14.

To the extent MIL No. 3 is facially directed toward the dismissed "prosecutorial defendants" Longanbach and O'Brien, it is **DENIED AS MOOT**.  The parties will not be permitted to retry the underlying homicide case.  The court will not admit such evidence in support of the 42 U.S.C. § 1983 claim remaining to be tried against the entity and supervisory defendants, absent a proffer of admissibility in the particular context in which it may arise at trial.  The court accordingly **GRANTS** the motion, but without prejudice to further argument.  The court expresses no opinion in the abstract on the potential impeachment value of any of the evidence targeted by the parties' MIL.

4.   **MIL No. 4:  To Exclude Reference To Plaintiff's Alleged Prior Acts Of Violence And Evidence Of Plaintiff's Character**

Genzler seeks to exclude reference to his alleged prior acts of violence and evidence of his character as irrelevant under Rule 401, as improper character evidence under Rules 404 and 405, and as unfairly prejudicial without probative value under Rule 403, essentially on the same grounds as for MIL No. 2.  MIL 4:3-7.  He urges exclusion of potential witnesses John Belsan, Lillie Finster, Jim Wilson, Patrick Rees, Michael Grenier, Heather Wallenborn, Nicolas A. Bargsch, Derrick Ricci, and

1   Officer I. Pardon, whom he believes "Defendants may attempt to call. . . solely to elicit testimony

2   regarding [Genzler's] prior specific acts." MIL 5:10-13. Defendants' Opposition alludes to some of

3   those potential witnesses as persons with knowledge of Genzler's own prior fights who testified at the

4   second trial, and to Belsen and Grenier as prosecution witnesses at Genzler's first trial. Defendants

5   contend such evidence is relevant to Genzler's damages, and the "jury in this case is entitled [to] know

6   every bit of evidence that the jury that convicted him of murder knew before it can decide if

7   defendants' alleged conduct damaged him." Opp. 3:21-25. The court disagrees.

8       The specific acts evidence will not be admitted for impermissible character evidence purposes.

9   The damages issues are bifurcated from the liability trial. The motion is **GRANTED** with respect to

10   the first phase of this trial, without prejudice to further argument should a damages phase follow.

11       **5.**    **MIL No. 5: To Accord The Conviction Of Involuntary Manslaughter**
                  **Based On Imperfect Self Defense The "Appropriate" *Res Judicata* Effect**

12

13       This MIL also arises out of Genzler's concern Defendants will attempt to "re-litigate" the

   underlying case decided by his re-trial jury and, because he is precluded from contesting his

14

15   conviction, the defense should not be allowed to "refer to, interrogate any witness concerning, or re-

   litigate in any way the facts surrounding or concerning Plaintiff's conviction for involuntary

16

17   manslaughter or the events giving rise to that conviction." MIL 2:2-5. He relies on Rules 401 and 403

   (relevance and prejudice). *See* MIL 5:27-28

18

19       Defendants oppose the motion on grounds exclusion of such evidence would unfairly prejudice

   their ability to refute Genzler's allegations. "Moreover, plaintiff's *res judicata* request is incomplete,

20

21   because plaintiff was also convicted of aggravated assault against Scott Davis at both trials, and giving

   full *res judicata* effect to the second conviction would show that the retrial jury believed Mr. Davis'

22

23   version of events." Opp. 2:2-5. They contend facts surrounding Genzler's conviction are not

   encompassed by that doctrine "because his ultimate conviction of a lesser offense merely demonstrates

24

25   acquittal of the greater offense, not factual innocence and not lack of probable cause for prosecution,"

   and thus the principle of *res judicata* "cannot achieve plaintiff's apparent goal of excluding evidence

26

27   that supported his second degree murder conviction." Opp. 3:9-12. Moreover, they argue while <u>Heck</u>

   <u>v. Humphrey</u> prohibits a plaintiff from collaterally attacking a valid conviction through a subsequent

28   civil lawsuit, that "decision says nothing about precluding a section 1983 **defendant** from relitigating

1   such issues." Opp. 4:23-5:6. They conclude the events giving rise to Genzler's conviction "are highly

2   relevant," warranting denial of the motion.  Opp. 6:3-5.  "Alternatively, if it is granted, it should

3   include Mr. Genzler's conviction for aggravated assault of Scott Davis." Opp. 6:5-6.

4        The Motion is **DENIED**. The prior rulings on the underlying incident scope of evidence control

5   this result.  Defendants are not precluded from presenting some underlying crime evidence.

6            **6.    MIL No. 6: To Preclude Any Witness Other Than Sky Flanders From**
             **Testifying About Facts And/Or Circumstances At The Scene Of The**
7            **Crime**

8        Genzler argues "such evidence is irrelevant, time-consuming, may cause confusion of the

9   issues and would be unfairly prejudicial to Plaintiff" under Rules 401 and 403.  MIL 1:25-26. He

10  believes Defendants may attempt to re-try the underlying homicide case. He contends only Flanders'

11  testimony is relevant because the "only issue in the present case is whether Defendants Longanbach

12  and O'Brien manipulated evidence and/or witnesses in the underlying case and, if so, whether they did

13  so in their investigatory roles or in a purely advocatory role," in particular "whether they manipulated

14  or pressured Sky Flanders into changing her testimony." MIL 5:10-6:5.

15       Defendants argue in opposition "[t]here is no way for a jury to conclude that Flanders'

16  testimony about the stabbing was false unless plaintiff can establish that the truth is something else,"

17  and they "have the right to offer evidence about what really happened the night of the stabbing," which

18  will entail offering the evidence Genzler seeks to exclude.  Opp. 6:11-14.

19       The Motion is **DENIED**, but the court **RESERVES** final ruling until the context for the

20  evidence at trial is known.

21            **7.    MIL No. 7: To Exclude Irrelevant Evidence Of Crime Scene**

22       This MIL targets exclusion of proposed defense exhibits "A-Y" (including such evidence as

23  the knife, photos of the knife, photographs of the crime scene, photographs of the autopsy, booking

24  photos, identification card, evidence related to Scott Davis and/or the charges related to him, and

25  photos of bloody clothes) as having no probative value, as being unfairly prejudicial, and as "irrelevant

26  to whether or not Sky Flanders saw a fight between Harless and Genzler, and/or whether she changed

27  her story after meeting with Longanbach and O'Brien." MIL 4:1-7.  Defendants oppose the MIL on

28  the same basis as they opposed MIL Nos. 1 and 6.

1    The court finds the ruling on this motion should be the same as on MIL No. 1 and for the same

2    reasons. The court accordingly conditionally grants the MIL, but **RESERVES** final ruling until the

3    issue arises in context at trial.

4    **C.**      **Defendants' Twenty-One (21) MIL**

5              **1.**      **MIL No. 1: To Exclude All Evidence Against Defendants Because Of
                           Plaintiff's Confidential Settlement With Longanbach And O'Brien**

6    Defendants argue the settlement constitutes a voluntary abandonment of Genzler's claim that

7    those individuals violated his constitutional rights, and their liability is dependent upon constitutional

8    violations by Longanbach and O'Brien. "Therefore, all evidence against the remaining defendants

9    should be excluded as irrelevant, because plaintiff has given [up] his right to prove the underlying

10   constitutional violations by dismissing Longanbach and O'Brien." MIL 1:23-2:4. Genzler contends

11   his claim is not one of *respondeat superior*, and Defendants' liability is not dependent on Longanbach's

12   participation in the case. The Objection revisits the Monell liability exposure standards for supervisory

13   and entity defendants, as is discussed in Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978). The Motion

14   is **DENIED**.

15

16           **2.**      **MIL No. 2: To Require Plaintiff To Establish He Was Prosecuted Without
                          Probable Cause**

17   In reliance on a "change in the law" after the Ninth Circuit decided the interlocutory appeal in

18   this case, Defendants argue Hartman v. Moore, -- U.S. --, 126 U.S. 1695, 1699 (2006) holds "that a

19   plaintiff who contends he was prosecuted in retaliation for exercising a protected right must allege and

20   prove absence of probable cause to prosecute." MIL 2:11-14. They acknowledge that although

21   Genzler does not allege retaliatory prosecution (as in Hartman), "his allegations that Longanbach and

22   O'Brien told Flanders to lie otherwise track the Moore allegations of intimidating and coercing

23   witnesses to change their testimony," the Ninth Circuit had heavily relied on Moore in deciding

24   Genzler's appeal, and the Moore case was overturned by Hartman,. Defendants urge the court to

25   require Genzler to show lack of probable cause for his prosecution before he can prevail in this case,

26   "because it arises from that same underlying case as relied on by the Ninth Circuit in the interlocutory

27   appeal in this lawsuit." MIL 2:14-21.

28   \\

1        Genzler opposes the motion on grounds Defendants' incorrectly rely on <u>Hartman</u>, both on the

2 facts and the policy underlying that opinion. <u>Hartman</u> involved a retaliatory-prosecution action in

3 factually distinguishable circumstances. The absence of probable cause showing is intricately tied to

4 the issue of retaliatory or malicious prosecution. Genzler does not contend he was prosecuted without

5 probable cause, or that his prosecution was retaliatory. The court finds <u>Hartman</u> inapposite here.

6 Genzler's theory is a due process violation based on what happened not before but afterward. The

7 Motion is **DENIED**.

8          3.     <u>**MIL No. 3: To Exclude Evidence Of Policies And Procedures Related To Prosecuting Criminal Violations Of State Law As A Basis For Liability**</u>

9

10        Defendants invoke Rules 401 (relevance) and 403 (prejudice) in support of their motion for

an Order to exclude "evidence about District Attorney's Office policies and procedures related to

11 enforcing the criminal law of the State of California, or mention in the jury's presence that liability

12 in this lawsuit may result for such policies and procedures." MIL 1:23-24. Specifically, they want to

13 exclude testimony or evidence about such alleged policies as:

14

15             (1) obtaining convictions by any means possible / winning at any cost; (2) violating legal ethics or professional rules of responsibility; (3) suborning perjury; (4) failing to disclose exculpatory evidence to the defense; and (5) improperly disqualifying defense counsel.

16

17 MIL 2:1-4.

18        Defendants argue such matters are irrelevant because they would be State, not County, policies

19 as a matter of law, and because Genzler previously stated he was basing his <u>Monell</u> claim on

20 administrative policies related to the hiring and firing of employees, as opposed to prosecutorial

21 policies. Opp. 5-8. Defendants allude to an error in this court's Order denying them summary

22 judgment. Dkt No. 170. In that Order, this court identified Genzler's allegations that he is seeking

23 "redress" for "the **administrative** functions of hiring, firing, compensation, promotion, job

24 assignments and failure to discipline." MIL 2:13-15, *citing* Dkt No. 170 at p 17. In footnote 11 of the

25 Order, this court quoted an earlier Order in the case entered by Judge Keep discussing <u>Pitts v. County</u>

26 <u>of Kern</u>, 17 Cal.4th 340, 362 (1998) ("When preparing to prosecute and when prosecuting criminal

27 violations of state law, a district attorney represents the state and is not a policy maker for the

28

01CV1462

1  county").[1]  Dkt No. 19.  In a later Order (Dkt No. 35), Judge Keep corrected her allusion to the

2  exposure of a county to Section 1983 liability for constitutionally violative "prosecutorial" policies and

3  customs as a misstatement, recognizing the word "prosecutorial" was inaccurate, a correction this court

4  did not incorporate into the MSJ Order.  Nevertheless, for the same reasons Judge Keep did not modify

5  her result on reconsideration after recognition of her error, this court does not construe its quotation

6  from her earlier Order as a fatal foundational flaw in the denial of the Supervisory Defendants' Motion

7  For Summary Judgment.

8          Defendants seek an Order limiting Genzler's <u>Monell</u> claim to practices of hiring, firing,

9  compensation, etc. "and plaintiff must prove that such administrative policies, not prosecutorial

10 policies, were the moving force behind his alleged constitutional rights," excluding "all evidence

11 concerning or related to" the alleged District Attorney's Office prosecutorial polices and practices,

12 including five examples enumerated in the MIL.  MIL 5:19-6:3.  However, such a ruling would not

13 dispose of the remaining issues to be tried with respect to the conspiracy, cover-up, and ratification

14 allegations.  The Motion is accordingly **DENIED**.

15          4.    **MIL No. 4: To Exclude Percipient Or Opinion Testimony About Office**
                  **Atmosphere Or Culture, About Beliefs Of Others, And To Exclude**
16                **Improper Character Evidence**

17         Defendants move under Rules 608 and 701 for an Order to exclude plaintiff's witnesses'

18 ("including, but not limited to, Rebecca Blair-Harutunian, Gerald Blank, Rupert Linley, Jill Schall and

19 A. David Stutz") testimony "regarding (1) the 'atmosphere within' or the 'culture' of the District

20 Attorney's Office based on what was 'common knowledge,' 'well known' or 'widely believed' among

21 other individuals in the office; or (2) 'the [Pfingst] administration's willingness to overlook ethical

22 violations of those perceived to be friendly to the administration' on the grounds that such opinions

23 (1) lack foundation, (2) amount to hearsay, (3) would have to be based on specialized legal knowledge

24 and expertise, when none of the named witnesses is designated as an expert in the matter, and (4)

25 would be unfairly prejudicial to defendants."  MIL No. 4, 1:24-2:5.  The motion also seeks to limit

26

27          [1] <u>Pitts</u> also establishes a district attorney "also represents the state, and not the county, when training
       and developing policy in these areas." <u>Pitts</u>, 17 Cal.4th at 362, 363 ("Our conclusion as to which entity the
28     district attorney represents might differ were plaintiffs challenging a district attorney's alleged action or
       inaction related to hiring or firing an employee, workplace safety conditions, procuring office equipment, or
       some other administrative function arguably unrelated to the prosecution of state criminal law violations").

01CV1462

1    expert testimony to "those witnesses identified in conformity with the Amended Case Management
2    Conference Order in this case."  Id. 2:6-7.  Any other opinion evidence not previously disclosed
3    "would be prejudicial, entail undue consumption of time and violate the spirit of Rule 403 ... and [Fed.
4    Rules Civ. P.] 26 and 37(c)(1). . . ."  Id. 2:8-11.

5           Defendants argue Genzler "improperly tries to attack the character of the entire . . . District
6    Attorney's Office."  MIL No. 4 2:25-26.  They challenge the declarations submitted by several current
7    or former employees (including those attached as exhibits to the MIL, citing to specific examples in
8    the Linley, Schall, and Stutz declarations ( Id. 3:9-42) as improper because the declarants do not limit
9    their testimony to personal perceptions and knowledge, and they contend things were "well known"
10   or "widely believed" by other individuals in the office, "raising both foundational and hearsay issues."
11   Id. 2:25-3:4.  Defendants contend what certain employees believed or said about their employer is
12   irrelevant unless adequate foundational facts are first established -- "i.e., personal knowledge of facts
13   tending to establish that members of the Pfingst administration knew of and condoned Longanbach's
14   alleged subornation of perjury."  Id. 3:4-8.  They also argue the office of the District Attorney is not
15   a "person with a character for truthfulness or untruthfulness," so Genzler "should not be permitted to
16   use what amounts to office gossip about irrelevant matters to 'impeach' an entity, as opposed to an
17   individual witness."  Id. 4:1-2.

18          Rule 701 limits opinion testimony by lay witnesses to those opinions which are "helpful to a
19   clear understanding of the witness' testimony or the determination of a fact in issue" and "not based
20   on scientific, technical, or other specialized knowledge" of the type possessed by an expert.
21   Defendants contend the determination whether a particular act constitutes a violation of legal ethics
22   requires expert testimony pursuant to Rule 702 and demands specialized knowledge of the law.
23   Defendants also cite authority for the proposition courts often prohibit such expert testimony on the
24   grounds it constitutes an improper legal conclusion.  MIL No. 4 4:5-22.  They argue witnesses Linley,
25   Schall, and Stutz "should not be permitted to opine that ethical violations took place in the District
26   Attorney's Office."  Id. 4:25-27.

27          Genzler opposes the motion on grounds the hearsay, expert knowledge, unfair prejudice, and
28   lack of foundation objections are "premature and speculative."  Opp. 2:11.  Counsel represents  trial

testimony will be elicited on a proper foundation, within hearsay exceptions, of a non-specialized or expert sort, and with proof that substantial probative value outweighs any prejudicial effect. The court **CONDITIONALLY GRANTS** the motion, but **RESERVES** a decision on this MIL until such time as the context at trial permits application of the Rules to actual evidentiary showings and particularized objections. Only discrete instances supported by competent evidence will be admitted.

### 5. MIL No. 5: To Exclude Improper Opinion And Character Testimony From Defense Witnesses

Defendants seek to prevent "anyone on Plaintiff's behalf, particularly his criminal defense attorney Gerald Blank, from mentioning or testifying to certain matters," in particular twenty-two (22) itemized statements extracted from Mr. Blank's deposition transcript (lodged as an exhibit to MIL No. 5). These remarks: refer to Longanbach as a crook; state O'Brien lied in court; represent Judge O'Neil and economist Arthur Brodshatzer were aware of or complained about Longanbach's dishonesty; reference a conspiracy between Longanbach and O'Brien of which the remaining defendants knew and approved; refer to evidence suppression; assert Pfingst lost his job when the evidence in Genzler's case came out; state the witnesses against Genzler lying in court on instructions from Longanbach; contend the retrial verdict resulted from Flanders' and Davis' lies; refer to an improper grant of immunity to witness Logel; refer to Longanbach's intent to intimidate criminal defense counsel in the Genzler case and other cases by disqualifying them; and the like. MIL 2:1-3:17. Alternatively, defendants request "such matters should not be mentioned in the jury's presence, unless and until the Court rules they are proper and admissible." MIL No. 5 1:25-26.

Defendants discuss Longanbach's subsequent conviction (later reduced and expunged) on a guilty plea to a count of grand theft for using County resources in personal matters. Blank was a principal accuser in the grand theft case as well as being Genzler's principal defender in the murder/assault case. Other than the bare fact that both Blank and Longanbach had some involvement in both cases, the two cases otherwise have nothing in common. MIL 4:7-13. Prior bad acts evidence is inadmissible under Rule 404(b), and Defendants argue limiting instructions cannot undo the prejudice of admitting such evidence when it is properly excluded as offered to prove the character of a person, to show action in conformity with character, or to show motive, intent, or state of mind at the time of a specific incident. *See, e.g.* Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993).

1   Defendants also argue Blank's beliefs are irrelevant and his opinions (for example, regarding

2   conspiracy or obstruction of justice based on official reaction to Rebecca Blair-Harutunian's

3   accusations) are inadmissible because "he was not designated as an opinion witness, and his opinions

4   were not disclosed in compliance with" Fed.R.Civ.P. 26, they are not proper lay opinions under Rule

5   701, and permitting such testimony would "interfer[e] with the jury's right and duty to determine the

6   facts."[2]  MIL No. 5, 6:10-7:3.

7        Genzler objects the MIL is "complicated, prolix, and confusing" and is "also in large part

8   unnecessary."  With respect to Blank's testimony, Genzler argues it was defense counsel who insisted

9   on eliciting Blank's "opinion," "belief," or "speculation" at Blank's deposition. Opp. 1:26-2:2. Genzler

10  denies any intent to seek to introduce "inappropriate or speculative statements into evidence," and asks

11  the court to reserve ruling until Blank is called to testify, "if he is called to testify during the course of

12  the trial," rather than ruling on each of the 22 discrete items listed in the MIL. Opp. 2:6-11. The court

13  **GRANTS** the motion.  Witnesses are to stick to the facts and not characterize individuals.

14       **6.**     **MIL No. 6:  To Exclude Mention, Evidence, Or Testimony By Plaintiff,**
                    **Gerald Blank, Or Kerry Steigerwalt Of Plaintiff's Version Of Specific**
15                  **Events About Which Plaintiff Refused To Allow Discovery Based On**
                    **Attorney-Client Confidentiality**
16
17       Defendants list 21 discrete subject matters they seek to exclude on grounds "discovery was

18  expressly refused based on inappropriate claims of attorney-client confidentiality" at the depositions

19  of Genzler, Blank, and Steigerwalt. MIL No. 6, 3:5:2. They attach a transcript of excerpts of Genzler's

20  videotaped deposition dated July 19, 2006. The discrete testimonial exclusions sought include, among

21  other things:  how the stabbing of Harless happened; Genzler's version of the stabbing, what he did

22  with his clothes and car after,  his version of changing his appearance after, and of giving Flanders a

23  ride; his self-defense contention; versions of trial testimony preparations; versions of Blank's receipt

24  ───────────────

25       [2]  Other examples of his potential opinion testimony Defendants seek to exclude are: Blank's opinion
     it was improper to warn Longanbach of Harutunian's accusations before Longanbach was questioned, whereas
26   Cal. Penal Code § 3303(c) requires notice to officers under investigation prior to any interrogation; his belief
     that many adverse witnesses lied is irrelevant, lacks foundation, and interferes with jury fact-finding; his
27   opinions regarding the retrial outcome "are incompetent, lack foundation, and are a means of admitting hearsay
     about what Mr. Blank claims some jurors told him;" his opinion that California law requires prosecutors to turn
28   over their notes in criminal discovery is unfounded; and his opinion regarding Longanbach's grant of
     prosecutorial immunity to witness Logel is inadmissible, factually misleading, and he failed to object at the
     time. MIL 7:4-8:15.

01CV1462

1  of crime scene evidence and imminent destruction of crime scene evidence; and what happened to

2  Genzler in prison. Defendants contend Genzler cannot claim attorney-client protection for his version

3  of such matters when he has placed in issue the manufacturing of false facts attributed to other

4  attorneys. They urge the court to find implied waiver. *See* Bittaker v. Woodford, 331 F.3d 715, 719

5  (9th Cir. 2003) (a "fairness principle" prevents a party from using the attorney-client privilege as both

6  a shield and a sword); *see also* Tennison v. City & County of San Francisco, 226 F.R.D. 615, 622

7  (N.D.Cal. 2005) (documents authored by a 42 U.S.C. § 1983 plaintiff's criminal defense counsel were

8  discoverable because of their bearing on not only his claim of suppression of exculpatory evidence but

9  also lack of knowledge of such evidence on the part of his attorney and himself). Defendants contend

10  Genzler faces no further criminal liability and, in seeking affirmative relief, he "has no right to hide

11  pertinent information behind privilege or confidentiality when the very persons he accuses need that

12  information to properly defend against his accusations." MIL 6:26-7:2. They argue because Genzler

13  refused to answer questions about his version of the facts at his deposition on privilege grounds, he

14  and his witnesses should be prohibited from presenting "any testimony or evidence regarding plaintiff's

15  version, and should be prohibited from describing his version of facts before the jury." Id. 7:8-11,

16  7:14-17 ("Defendants request an order excluding or limiting testimony or mention by plaintiff, Mr.

17  Blank and Mr. Steigerwalt about any fact about which he invoked attorney-client confidentiality to

18  hide pertinent information during discovery, including all enumerated areas").

19      Genzler opposes the MIL on grounds, among others, the questions he declined to answer

20  "explicitly asked what statements he made to his criminal defense attorneys during confidential

21  conferences." Opp. 1:20-22. He objects Defendants should have brought the matter up as a motion

22  to compel or for discovery sanctions under Fed.R.Civ.P. 37, not as subject matter for a motion *in*

23  *limine*. The court agrees. Genzler also argues nothing in the case or fact of his bringing a civil lawsuit

24  waived his attorney-client privilege: "The allegations that Mr. Longanbach suborned perjury from a

25  witness do not implicate the statements Mr. Genzler made to his own lawyer in confidence during the

26  course of his criminal case." Id. 6-8. He attaches excerpts from his deposition transcript

27  memorializing counsel's colloquy on the issues. To the extent this MIL has not been mooted by earlier

28  rulings, it is **DENIED**. Defense counsel will not be permitted to ask Genzler what he told his attorney.

01CV1462

**7.    MIL No. 7:  To Exclude Hearsay Statements By Witness Flanders**

Defendants move under Rules 403 (exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time), 801 and 802 (hearsay) to prevent Genzler from mentioning or presenting testimony or other evidence "regarding out-of-court statements made by witness Sky Flanders while not under oath at prior trials or in deposition." MIL 1:12-26.  In particular, they seek to exclude statements Flanders allegedly made to DDA Rebecca Blair-Harutunian about whether former defendant Longanbach told her to lie, "particularly testimony of Ms. Blair-Harutunian about Ms. Flanders' statements to her." Id. 2:1-3.

Blair-Harutunian testified at her deposition that in a private meeting with Flanders at the District Attorney's Office, Flanders admitted to her that she did not tell the truth at the first trial "because Pete [Longanbach] and Jeff [O'Brien] told me not to" (Blair-Harutunian Depo. 221:10-18), a statement Defendants characterize as containing "double hearsay." MIL 2:17-22. Defendants argue that because Flanders is not a party, but merely a witness, and because Longanbach and O'Brien are no longer parties, the "admission by party-opponent" exception to the hearsay rule (Rule 801(d)(2)(A)) does not apply, and the Flanders statement to Blair-Harutunian was not given under oath, so the exception of Rule 801(d)(1)(A) does not apply either, warranting exclusion of her statement. Id. 2:23-3:2.  In addition, they argue permitting such testimony "will cause undue delay and waste of time." Id. 3:4-5.  They contend that because "Flanders will be called as a witness and can testify directly regarding whether or not she was told to lie at plaintiff's first criminal trial," hearsay testimony from Blair-Harutunian is unnecessary and should be excluded. Id. 3:8-12.

Genzler contends Flanders' statements to Blair-Harutunian "are admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E)," statements in Flanders' prior testimony are "statements against pecuniary interest pursuant to Rule 804(b)(3)," statements by Longanbach and O'Brien to Flanders are "party-opponent statements and/or co-conspirator statements pursuant to Rule 901(d)(2)(D) and (E)," and Blair-Harutunian's testimony about what Flanders told her "is relevant ant and non-duplicative . . ., if for no other reason than to explain Blair-Harutunian's subsequent conduct." Opp. 1:27-2:9.  Genzler argues the statement she testified Flanders made to her in a private conversation falls within the cited hearsay exceptions and should be admitted at trial.

- 14 -

01CV1462

Genzler also contends the out-of-court statements he alleges Longanbach and O'Brien made to Flanders are admissible as non-hearsay under Rule 801(d)(2)(D) and (E), as a "statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" may be offered against the party as a vicarious admission. Opp. 3:27-4:1. A statement is also not hearsay if "offered against a party" and made "by a coconspirator of a party during the course and furtherance of the conspiracy." Id. 1-3, *citing* Rule 801(d)(2)(E). The court rejects Genzler's co-conspirator theories. The allegations of conspiracy involve the supervisors, so that must be the subject matter of the MIL.

The motion is **DENIED**. The only permitted uses of Flanders' statements will be for non-hearsay purposes. Defense counsel is charged with drafting a limiting instruction to the jury that Blair-Harutunian's testimony regarding what Flanders told her may only be considered for the effect it had on Blair-Harutunian and on her supervisors in response to her reporting of prosecutorial misconduct during the first trial, not for the truth of what Flanders may say Longanbach or O'Brien told her.

### 8. MIL No. 8: To Exclude Character Evidence And Personal Information Relating To Witness Scott Davis

Defendants move under Rules 402, 403, and 608 to preclude Genzler from presenting evidence about certain personal information relating to witness Scott Davis on grounds of undue prejudice, impermissible character evidence, and relevance. The targeted evidence relates to alleged events occurring between Davis and his ex-wife at the time of their divorce. MIL No. 7:23-2:3. Genzler initially filed opposition to the motion on grounds he does not think Davis should be called to testify because he is not needed, but if he does testify, his credibility becomes an issue, and his testimony about this evidence purportedly reveals he is "prone to exaggeration, hysteria and melodrama." Opp. 1:21-26. Genzler subsequently withdrew his opposition. The motion is **GRANTED**.

### 9. MIL No. 9: To Exclude Any Witness From Testifying That He Or She Was Retaliated Against By Defendants

Defendants seek to exclude any testimony that any District Attorney employee was retaliated against in connection with Genzler's case, in particular but not only Blair-Harutunian. They argue her belief that her failure to win a promotion was retaliation for turning over to Genzler's criminal defense counsel her interview notes of Flanders and O'Brien is "irrelevant to whether Mr. Genzler suffered a

1   constitutional deprivation, and is unfairly prejudicial to the defendants." MIL No. 9, 1:27-2:5.  They

2   argue jurors "might incorrectly infer that retaliation against her is part of plaintiff's claim," and the

3   "County would be unfairly prejudiced because it is accused of improper hiring, firing and supervisory

4   policies." Id. 2:21-23.

5          Genzler opposes the motion on grounds his claims include allegations the defendants:

6                   . . . ratified the unlawful actions of Mr. Longanbach and Mr. O'Brien by
                    actively participating in a cover up of those misdeeds.  Among the
7                   actions taken by defendants was a campaign to dissuade, discredit,
                    humiliate, and retaliate against persons who spoke out against their
8                   actions or refused to "tow [sic] the party line" [including Blair-
                    Harutunian].
9
   Opp. 1:25-2:2.
10
           Genzler also disputes Defendants' suggestion Blair-Harutunian's claims of retaliation are
11
   limited to a "missed promotion."  "Rather, they include numerous examples of misconduct by the
12
   Defendants which were intended to alter her chosen course of conduct and/or punish her for not
13
   kowtowing to the administrative Defendants' expressed desires."  Opp. 2:9-12.
14
           The motion is **DENIED**, but without prejudice to a Rule 403 objection at trial, if warranted.
15
   Retaliation can be another way to ratify conduct and, if true, shows the supervisors' knowledge.
16
               **10.     MIL No. 10:  To Exclude Evidence Of Settlement By Longanbach And**
17                 **O'Brien And Their Former Status As Defendants**

18         Defendants move under Rules 402, 403 and 408 to preclude mention or evidence of

19   Longanbach's and O'Brien's settlement or former status as defendants in this action on grounds of

20   irrelevance and prejudice.  They argue if the jury is informed Longanbach and O'Brien settled Genzler's

21   claims, "a jury might conclude that they must have committed the wrongs of which they were accused,

22   and thus that the County should be responsible," with a similar risk if the jury is informed they were

23   previously named defendants in this case, because it would likely "result in undue speculation and

24   distraction on the part of the jury regarding why they are no longer in the case."  MIL 10, 3:7-18.

25   "Evidence of the settlement should [also] not be permitted because the terms of the settlement are

26   confidential, and have not been disclosed to the remaining defendants, who have no way of

27   determining whether the settlement is genuine and made in good faith, or what other agreements or

28   understandings may accompany it." Id. 3:19-22. See MIL No. 19, below.

1    Genzler opposes the motion on grounds Defendants rely on only the portion of Rule 408

2  providing that evidence of a settlement or compromise of a disputed claim "is not admissible to prove

3  liability for or invalidity of the claim or its amount," and "[e]vidence of conduct or statements made

4  in compromise negotiations is likewise not admissible." Rule 408 also provides it does "not require

5  the exclusion of any evidence otherwise discoverable merely because it is presented in the course of

6  compromise negotiations," nor does it "require exclusion when the evidence is offered for another

7  purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or

8  proving an effort to obstruct a criminal investigation or prosecution." Rule 408. The exclusionary

9  portion of the Rule only applies when the purpose of the evidence is to prove "the validity or invalidity

10  of the claim or its amount," so that "an offer for another purpose is not within the rule." Advisory Note

11  to Rule 408. Genzler agrees not to mention the specific terms or amount of the settlement. However,

12  inasmuch as Longanbach and O'Brien will be witnesses at trial, he argues their status as defendants

13  "is critical to the evaluation of their credibility as they have given previous statements under oath when

14  they were in the position of defendants whose statements might subject them to civil liability," and the

15  "fact of their settlement also is relevant to the issue of their credibility." Opp. 2:6-12.

16    The court is inclined to grant the motion but **RESERVES** final ruling until the issue arises in

17  context at trial. If such evidence is admitted, the court will give the jury a limiting instruction, to be

18  drafted by plaintiff's counsel.

19    **11.   MIL No. 11: To Exclude Evidence Or Testimony Regarding Subsequent**
         **Criminal Proceedings Involving Peter Longanbach And Alleged**
20        **Wrongdoing Therein**

21    Defendants anticipate Genzler may raise prosecutorial misconduct by Longanbach in two

22  criminal cases subsequent to his own, Terrones and Aceves. They want reference to those matters

23  excluded from this trial because in neither case was there an issue of subornation of perjury, such

24  evidence is not relevant to this case, and such evidence would also be inadmissible as character

25  evidence under Rule 404(a). Rule 608(a) does not supply an exception because specific allegations

26  of wrongdoing would be neither opinion nor reputation. Id. 3:11-25. Even if the court were to find

27  relevance to a legitimate issue, Defendants argue Rule 403 supports exclusion. They further contend

28  \\

1  those two instances of alleged misconduct took place after the Genzler prosecution, "so those events

2  could not have caused *Genzler's* alleged deprivation." MIL No. 11, 3:11-12.

3       Genzler opposes the motion on grounds evidence of Longanbach's alleged custom and practice

4  "to engage in prosecutorial misconduct in high profile cases involving fraud and dishonesty,

5  concealment of evidence and subornation of perjury" is relevant "to show the custom and practice of

6  Longanbach, the continuing custom and practice of the District Attorney's Office to tolerate and even

7  encourage misconduct necessary to obtain convictions in high publicity cases, the continuing shielding,

8  protection and rewarding of Longanbach by the supervisory defendants in this case and to rebut any

9  claim Mr. Longanbach's actions in suborning perjury from Sky Flanders is unsubstantiated because

10 of the result of misunderstanding, accident, mistake or false claims by the Plaintiff." Opp. 1:22-2:2.

11 Genzler traces the alleged prosecutorial misconduct in each of those cases. He proffers the testimony

12 of a District Attorney investigator, Linda Collins, who allegedly overheard Longanbach advise an

13 officer regarding perjury in a search warrant affidavit associated with the <u>Aceves</u> case. He contends

14 she reported her allegations to her superior, but no actions were taken to punish, deter, or correct

15 Longanbach's conduct. <u>Id.</u> 2:2-12. Genzler contends that conduct is relevant to show Longanbach's

16 practice and custom, his superiors' shielding and sheltering, and the *de facto* custom of the District

17 Attorney's Office to permit misconduct as long as the desired result was achieved. <u>Id.</u> 2:12-15. In

18 <u>Terronis</u> case, a Superior Court judge granted habeas corpus relief based on "deliberate concealment

19 of evidence and misrepresentations by Mr. Longanbach in connection with that case." <u>Id.</u> 2:15-18.

20 On those bases, Genzler contends no confusion will result from the introduction of such evidence, it

21 will not be time-consuming to elicit, and it will be highly probative.

22      The court finds the <u>Terronis</u> case is not probative and **GRANTS** the motion with respect to that

23 case. If it is contested at trial that Longanbach put Flanders up to lying, the court may permit evidence

24 of the <u>Aceves</u> case. The court **RESERVES** final ruling until the issue arises in context at trial.

25      **12.   MIL No. 12: To Exclude Evidence OF Expunged Conviction**

26      Defendants move to exclude any reference to Longanbach's felony conviction or the underlying

27 facts of that "expunged conviction." He pled guilty in November 2001 to a single count of felony

28 grand theft, admitting he had used District Attorney staff to prepare personal documents, used County-

owned property for personal purposes, and worked on private matters during office hours, for which he was sentenced to three years unsupervised probation. MIL 12, 1:23-27. In November 2002, the offense was reduced to a misdemeanor, and the court terminated Longanbach's probation early. Ten months later, he was permitted to withdraw his guilty plea, pursuant to Cal. Penal Code § 1203.4 and enter a plea of not guilty. The accusations against him were then dismissed, as evidenced by the exhibit to MIL 12. Defendants contend the "expunged conviction" is inadmissible, relying on Rule 609(c). Id. 1:27-2:7.

> Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

Rule 609(c).

Defendants argue "the disability of being impeached by a conviction is clearly within the scope of section 1203.4," which provides that a dismissal under that section encompasses the defendant's release "from all penalties and disabilities resulting from the offense of which he or she has been convicted." Cal. Penal Code § 1203.4(a). They rely on a 1922 California Court of Appeal case, People v. Mackey, 58 Cal.App. 123, 130-31 (1922), construing a prior statutory provision and holding the trial court did not err in excluding the record of a conviction, concluding that no convicted person discharged after probation "thenceforth should be regarded as one possessed of the degree of turpitude likely to affect his credibility as a witness." Defendants contend Longanbach "has been deemed 'rehabilitated' under the law by reason of his dismissal pursuant to California Penal Code section 1203.4" within the meaning of Rule 609(c), and an Order pursuant to section 1203,4 "wipes out" the entire proceeding. MIL 2:11-3:21.

> The clear intent of the probation sections of the Penal Code and especially of section 1203.4 is to effect the complete rehabilitation of those convicted of crime. The record of one released under this section is wiped clean. . . .

People v. Taylor, 178 Cal.App.2d 472, 478-79 (1960).

- 19 -

01CV1462

1    Based on the August 14, 2004 proceeding (*see* MIL 12 exhibit), Defendants argue:  "Mr.

2   Longanbach's prior conviction either does not exist because his guilty plea was withdrawn, or it has

3   been expunged in a manner consistent with [Rule] 609(c), and is inadmissible."  MIL 12, 4:7-9.

4    Genzler disagrees with Defendants' premise that "the action under § 1203.4 is the equivalent

5   of a 'pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding

6   of rehabilitation. . .'"  Opp. 1:26-2:1.  Because of the separately codified procedure for pursuing from

7   the court a "certificate of rehabilitation" (*see* Cal. Penal Code § 4852.01 *et seq.*), he contends the

8   granting of a section 1203.4 motion is "neither a pardon, an annulment, certificate of rehabilitation,

9   nor the equivalent of a certificate of rehabilitation" and, accordingly, "the provisions of [Rule] 609(c)

10   . . . do not apply."  Opp. 2:17-3:4.  He notes the absence of Defendants' citation to any Ninth Circuit

11   "holding that § 1203.4 procedure precludes use of a conviction for impeachment under Rule 609."

12   Opp. 3:4-6.  The court notes the absence of any case law citation from Genzler to the contrary.

13    The court finds the specifics of what Longanbach did are not relevant to these proceedings.

14   The fact of a felony conviction is normally admissible for impeachment purposes.  The court

15   **RESERVES** ruling on the motion until counsel provides the court with additional authority regarding

16   the permissible uses of evidence of an expunged conviction.

17        **13.   MIL No. 13: To Exclude Evidence Or Reference To Mr. Longanbach's Statement That "Rain Is Bad"**

18

19    In his First Amended Complaint paragraph 94, Genzler alleges Longanbach attempted to

20   influence "investigators to perjure themselves" during his 1996 trial.  In particular, among other things,

21   Genzler alleges Longanbach was aware of an issue related to blood stains on a shirt Genzler allegedly

22   wore on the night of the incident regarding degraded DNA evidence apparently caused by exposure

23   to moisture.  That paragraph continues:

24        Longanbach wanted to argue that Genzler washed the shirt himself, thus demonstrating his intent to cover up a crime. Accordingly, Longanbach contacted Sargent [*sic*] Martin, the office[r] who investigated the scene

25        and who wrote the description of the area and weather conditions on the evening of the incident. Longanbach told him: "Just remember, rain

26        is bad." The reason that "rain is bad" is because it would explain why the shirt was exposed to moisture.

27    Defendants raise relevance and prejudice grounds for barring Genzler from mentioning or

28   offering evidence that Longanbach told Sgt. Martin "rain is bad."  They take issue with Genzler's

characterization of that conduct as an attempt to suborn perjury, noting Flanders "who was present at the killing, has always testified it was only 'drizzling.'" MIL 13:8-8. "Sargeant Martin did not testify at plaintiff's trial or at his retrial, so it is not possible to know whether he would have testified it was raining or drizzling. He was not present when Mr. Genzler killed Mr. Harless, so it is doubtful a court would have allowed him to testify whether it was rainy or drizzling before he arrived on the scene." Id. 2:9-13. Defendants note Judge Keep held the "rain is bad" statement related to actions that "occurred once the investigative detective work was done, probable cause established, and Longanbach was preparing for trial," and granted Longanbach's summary judgment motion on absolute immunity grounds regarding that paragraph's allegation of subornation of perjury. Id. 3:3-11, *quoting* Judge Keep's Order. Relying on Rule 404(a), they also argue Genzler cannot use the remark as evidence to help prove subornation of perjury from Flanders because that would entail the kind of inference the Rule prohibits (*i.e.*, evidence of character trait not admissible to prove action in conformity therewith on a particular occasion), and no Rule 404 exception applies because the statement is not an opinion or reputation for truthfulness. MIL 13, 3:12-24. Finally, as Sgt. Martin did not testify, Defendants contend the court's Rule 608(b) discretion should not provide an avenue to admit the evidence because in that circumstance, the evidence is not probative of truthfulness, "if that were a relevant issue," leaving unfair prejudice to the Defendants as "the only other use" for it. Id.3:25-4:2.

Genzler alleges Longanbach told officer Martin "how he wanted Martin to testify" by saying "rain is bad" because rain would tend to provide a natural and innocuous explanation why the DNA samples were degraded, contrary to Loganbach's trial theory that Genzler tried to wash his clothes. Opp. 1:25-2:2. He disputes Defendants' contention that because Longanbach is entitled to absolute immunity for that action, the statements are irrelevant to the issues presented against the other defendants "who are not entitled to the same immunity." Id. 2:3-8. Genzler identifies two pertinent issues: (1) whether "Longanbach was improperly manipulating witness testimony in order to secure a conviction, and (2) whether the supervisory defendants were aware of his conduct and/or took actions to cover it up." Id. 2:11-13. "Mr. Longanbach's handling of witnesses, including Officer Martin and Ms. Flanders, informs on this issue and is therefore relevant." Id. 2:15-17. Once the determination is made that Longanbach engaged in improper conduct, Genzler contends a second inquiry must follow

into "whether the administrative defendants were aware of the misconduct and/or what they did once they became aware of the misconduct," with the latter inquiry unaffected by Longanbach's entitlement to any form of immunity for wrongful acts. Id. 2:18-22. On that basis, he argues Longanbach's "rain is bad" statement to Officer Martin is relevant and should not be excluded.

The court **CONDITIONALLY GRANTS** the motion. If there is a contested issue at trial whether Longanbach told Flanders to lie, then the "rain is bad" evidence will be admitted because it could be relevant to show a likelihood Longanbach tried to shape the evidence against Genzler. If Defendants choose not to litigate that issue, the "rain is bad" evidence will be excluded.

### 14. MIL No. 14: To Exclude Evidence Or Testimony Regarding An Allegedly Erased Audiotape

FAC paragraphs 60 through 64 allege Longanbach or O'Brien erased or "tampered with" an audiotape recording of an interview with Scott Davis. Defendants want to avoid any reference to the audiotape. They argue Judge Keep granted summary judgment for Longanbach on the audiotape issue over four years ago, and it would be unfair to reopen the matter now. MIL 14, 1:23-2:4. Judge Keep found an absence of evidence to support the claim that either Longanbach or O'Brien erased the tape. Id. 2:19-25, *quoting* Judge Keep's August 13, 2002 Order at 10:23-25. Moreover, they argue "Longanbach's alleged discovery practices bear little if anything on his propensity for truthfulness." Id. 4:1-3. They also seek exclusion under Rule 403 on grounds the probative value is substantially outweighed by an unduly prejudicial effect, potential to get sidetracked on a collateral issue. They suggest "a distinct possibility that Genzler or his criminal defense attorney may have erased the tape themselves."

Genzler argues Judge Keep's ruling related to Longanbach addressed only the issue of absolute immunity and is "not relevant to the issues of destruction of evidence and/or manipulation of testimony." Opp. 2:7-11. The audiotape purportedly contained recorded witness statements made by Scott Davis, "one of only two eyewitnesses to the crime," and its "mysterious disappearance . . . deprived Genzler of the opportunity to review this crucial evidence. Id. 2:21-23. Genzler contends the matter is probative of "whether Longanbach and O'Brien manipulated testimony and/or destroyed evidence in order to secure the conviction of Plaintiff Genzler and whether the County of San Diego conspired to cover it up," including "the manner, method, and means." Id. 2:16-20.

1     The motion is **GRANTED**. Judge Keep decided this issue on summary judgment. No mention

2    shall be made at trial of the allegedly erased audiotape.

3             **15.**   **MIL No. 15:  To Exclude Mention Or Evidence Of O'Brien Changing Or Destroying A Report, And To Exclude All Testimony Of Rebecca Blair-**

4                    **Harutunian Concerning Mr. Longanbach Or Mr. O'Brien**

5     Defendants seeks to exclude as irrelevant, inadmissable opinion testimony, and unduly

6    prejudicial evidence Genzler's use of Blair-Harutunian's testimony to "attempt to establish that Peter

7    Longanbach and Jeffrey O'Brien met with Sky Flanders before his preliminary examination, and told

8    her that in order to secure a conviction, she needed to lie. (FAC ¶ 66)."  MIL 15, 1:24-26.  Blair-

9    Harutunian was the prosecutor assigned to handle Genzler's retrial.  As characterized by Defendants:

10            She claims that Mr. O'Brien told her that Ms. Flanders told him and Mr. Longanbach about previous fights involving Mr. Harless. Ms. Blair-

11            Harutunian also claims that Mr. O'Brien said that Mr. Longanbach directed him not to include those statements in the official reports that

12            were turned over to defense counsel. (FAC, ¶ 56.) She also claims that when she raised this matter to her superiors over a week later, she was

13            discouraged from providing the information to Mr. Genzler's defense, even though she did exactly that.

14

15   MIL 15, 1:28-2:6.

16     Defendants contend such evidence is inadmissible "because Judge Keep ruled that plaintiff

17    failed to raise any genuine issue of material fact as to whether Mr. Longanbach instructed Mr. O'Brien

18    to redraft the report of their interview with Ms. Flanders," and "granted Mr. Longanbach's summary

19    judgment motion in that regard," so it "is improper for plaintiff to raise the identical issue again."  MIL

20    2:9-13; *see* MIL 2:21-3:9 (discussing Judge Keep's Order on the issue whether Longanbach ordered

21    O'Brien to redraft the report and the issue whether O'Brien actually redrafted it).

22     Genzler argues Defendants misplace their reliance on the summary judgment Order  because

23    that motion addressed the issue of absolute immunity and only as to Longanbach, matters no longer

24    part of the case, whereas "the issues of destruction of evidence and/or manipulation of testimony,"

25    "whether the instant Defendants were aware or made aware of these acts," and "the Defendants'

26    response thereto" remain to be tried.  Opp. 2:11-24.

27     Defendants also argue the evidence is "inadmissible on a cover-up or conspiracy theory,

28    because there was no cover-up *by Ms. Blair-Harutunian*," who actually provided the information to

Genzler's defense counsel.  MIL 2:14-16 (emphasis added).  However, the supervisory defendants'

- 23 -

1   response to her information has probative value on that issue. She presumably has personal knowledge

2   of their reactions and conduct in response to her reports of suspected mishandling of Genzler's first

3   prosecution from which a jury could draw reasonable inferences in light of other evidence.

4   Defendants also contend that with the settlement and dismissal of O'Brien, Blair-Harutunian's

5   testimony as an impeachment witness is "moot" and "irrelevant to the issues that will be tried." MIL

6   15, 2:18-20. However, any witness can be impeached, not just testifying *parties*, so this theory for *in*

7   *limine* exclusion is not persuasive, as it is anticipated O'Brien will testify at trial.

8   In response to Defendants' additional objections that any testimony by Blair-Harutunian

9   regarding what went on in the meetings Longanbach and O'Brien had with Flanders would be hearsay,

10   her testimony relies on improper opinion lacking specialized knowledge of legal ethics, and her non-

11   designation as an expert witness entitled to opine regarding Longanbach's or O'Brien's ethics (MIL

12   3:12-27), Genzler characterizes her testimony as primarily a recitation of statements she was told by

13   Longanbach and O'Brien, along with her explanation of what she did in response, not "opinion

14   testimony." Opp. 2:27-3:2. Genzler argues Defendants' objections go "only to the weight and not

15   admissibility of the testimony," so it is not barred by Rules 602 or 701.

16   Defendants finally seek to exclude this evidence on grounds unfair prejudice would flow from

17   the possibility the jurors may believe Longanbach and O'Brien acted improperly, and the "jurors'

18   natural reaction may be to punish the defendants at the table for the acts of others," or they "could

19   easily be misled into trying collateral allegations against others that are not properly before them in

20   this case." MIL 15, 4:3-16.

21   The Motion is **DENIED**. The Blair-Harutunian testimony is admissible to show what she

22   herself did, why she did what she did, and her supervisors' responses. Defense counsel is charged with

23   drafting a limiting instruction.

24   **16.     MIL No. 16:  To Exclude Evidence Or Testimony Regarding Alleged Perjury And Immunity Of A Prosecution Witness, Sheri Logel**

25   This MIL is unopposed. The motion is **GRANTED**.

26   \\

27   \\

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 17.   MIL No. 17:  To Exclude Evidence Of Damages Based On Attorney's Fees Related To Plaintiff's Retrial For Murder

Although the damages phase of the trial has been bifurcated, the court addresses Defendants' motion to exclude evidence of damages in the form of attorneys' fees paid to Gerald Blank for Genzler's second criminal trial on grounds Genzler did not actually incur the loss himself and an absence of causation. They rely on Rules 401, 402, and 403. Defendants acknowledge a Section 1983 plaintiff can recover compensatory damages for attorneys' fees expended in defending a prior criminal action when the fees are "a direct and foreseeable consequence" of the constitutional violation. MIL 2:20-23, *quoting* Borunda v. Richmond, 885 F.2d 1384, 1389-90 (9th Cir. 1988). However, they cite to Blank's deposition testimony his retainer agreement was with Genzler's mother, not Genzler, Blank holds a security interest in a home she owns, and she continues to send him checks to pay off the debt. On that basis, they argue attorneys' fees related to the criminal retrial are not "actual losses" Genzler himself suffered, and the evidence is therefore irrelevant . MIL 15, 2:11-3:7. Genzler refutes that representation.  He testified at his deposition and will testify at trial that he is liable for Blank's attorneys' fees under an agreement with his mother obliging him to reimburse her. Opp. 1:24-2:1.

Defendants also move to exclude that evidence on grounds Genzler purportedly cannot establish the amount of Blank's fees, citing various indications Blank spent time on other matters or would have had to spend the time preparing and trying the second trial irrespective of the alleged subornation of perjury inasmuch as "the first set of convictions was reversed before the alleged subornation came to light." MIL 17, 3:9-28.   A prove-up of the amount will follow in the normal course.   With respect to the causation hurdle Defendants advance, Genzler argues the issue of causation is a matter for trial ("It is the position of the plaintiff that the evidence will show that the verdict of involuntary manslaughter achieved in the second trial was the result of the only significant change between the first and second trials:  the exposure of the truth which had been prevented by Mr. Longanbach's and defendants' actions during the first trial"). Opp. 2:1-5. The court concurs causation is a decision for the factfinder.

To the extent criminal defense attorneys' fees are a recoverable component of damages in a 42 U.S.C. § 1983 action and the evidence at trial is competent, the Motion to preclude presentation of evidence of Blank's attorneys' fees is **DENIED**.

- 25 -

### 18.   MIL No. 18:  To Exclude Hearsay Statements By Former Defendants Longanbach And O'Brien

Defendants move under Rules 403, 801, and 802 to exclude out-of-court statements by former defendants Longanbach and O'Brien, specifically that Genzler not be permitted to use the "admission by party-opponent" exception to the hearsay rule (Rule 801(d)(2)(A)), inasmuch as they have settled with Genzler and are no longer parties to the litigation.  MIL 1:23-2:2.  Defendants also seek to eliminate use of the "agency exception" to the hearsay rule (Rule 801(d)(2)(D)) with respect to the County, on grounds this case does not fit the intended circumstances where "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay.  They argue the exception has "never been applied to a Monell action" under 42 U.S.C. § 1983, and should not be because, "as a matter of law, the employers cannot be liable on an agency or respondeat superior basis."  MIL 18, 2:21-27.  Alternatively, Defendants argue that if the court recognizes the agency exception here, Longanbach's and O'Brien's out-of-court statements should still not be admitted because the "interests of Longanbach and O'Brien were **not** aligned with the interests of other defendants in this litigation" (using the example of their confidential settlement agreement with Genzler), so "treating Longanbach and O'Brien as agents of the County will unfairly prejudice the defendants."  Id. 3:11-20.

Genzler opposes the motion on grounds Longanbach and O'Brien "are still co-conspirators and thus their statements still fall under the party-opponent exception" of Rule 801(d)(2)(E).  Opp. 2:8-23.  He intends to show, as required for admissibility under the co-conspirator statement exception:  "(1) the existence of a conspiracy, (2) declarant made the statement during the course of the conspiracy, and (3) the statement was made in furtherance of the conspiracy."  Opp. 2:23-26.  He also characterizes Defendants' contention the agency exception does not apply in 42 U.S.C. the targeted statements by Longanbach and O'Brien are admissible evidence.  Id. 3:2-15.

Finally, Genzler disputes Defendants' undue prejudice argument due to the "extremely probative" nature of Longanbach's and O'Brien's statements to Flanders and to other County employees regarding "whether they manipulated or destroyed evidence or testimony in pursuing a criminal conviction against Plaintiff," and to show what the County Defendants "knew and how they comported themselves after being advised of the misconduct," issues central to their liability.  Opp. 4:4-10.

01CV1462

1   The court finds the statements targeted by this MIL are those made before the first trial.

2   Defendants concede such statements could be admissible if made during the time a conspiracy was on-

3   going. Accordingly, the Motion is **DENIED**.

4         **19.**   **MIL No. 19: To Compel Disclosure Of Confidential Settlement Agreement To Defendants, Or Alternatively, For In-Camera Review By Court Of**

5                **Confidential Settlement**

6   Genzler did not oppose this motion. The Motion is **DENIED AS MOOT**. It is the court's

7   understanding the terms of the Confidential Settlement Agreement Genzler reached with Longanbach

8   and O'Brien will be shared with the remaining Defendants, under a Protective Order, to permit them

9   to explore whether the settlement or any related agreements could be used to impeach Longanbach or

10  O'Brien in their trial testimony or for other legitimate purposes.

11        **20.**   **MIL No. 20:   To Exclude Evidence Regarding Prior Finding Of Prosecutorial Misconduct By Defendant Pippin**

12

13  Defendants move under Rules 403, 404, and 608 to exclude testimony or other evidence

14  regarding a prior finding that defendant James Pippin committed prosecutorial misconduct during a

15  1982 murder prosecution having no connection to this case. They contend a "prior bad act" unrelated

16  to the witness' character for truthfulness or untruthfulness should not be used to impugn Pippin's

17  credibility, and the evidence would be unduly prejudicial. MIL 1:23-2:12.

18  Pippin  prosecuted "Herman G. Martin for conspiracy to commit extortion, conspiracy to

19  commit assault with a deadly weapon, murder, and assault with a deadly weapon. In Re Martin, 44

20  Cal.3d 1, 6-7, 9 (1987)." Id. 2:123-15. Martin was convicted on  all counts, but was granted habeas

21  corpus relief by the California Supreme Court. That court found Pippin had "committed prosecutorial

22  misconduct by intimidating potential defense witnesses with threats of arrest and prosecution," but also

23  noted "the prosecution acted as it did out of a desire to insure that a man whom it sincerely believed

24  to be guilty was convicted," and "the misconduct in this case, although certainly serious, was not

25  gross." Id. 2:15-21, *quoting* In re Martin. Defendants argue the California court's findings in the

26  Martin case "are inadmissible to prove any relevant issue in this case," because "[t]here is no allegation

27  that Pippin threatened any witness, or knew of threats," and the evidence "is not probative of Pippin's

28  character for truthfulness or untruthfulness," warranting an exclusion  here of any cross-examination

of Pippin regarding findings in the Martin case." Id. 2:22-26. They also argue the "similarity between

1    the acts alleged by Mr. Genzler and the findings made against Mr. Pippin [in <u>Martin</u>] may encourage

2    the jury not simply to disregard Mr. Pippin's testimony, but also to decide the substantive issue

3    improperly." <u>Id.</u> 3:4-16.

4         Genzler opposes the motion on grounds if Pippin testifies at trial, his credibility and ability to

5    engage in conduct such as attempting to improperly steer any witness or to participate in any cover-up

6    of Loganbach's and O'Brien's misconduct are relevant, and the <u>Martin</u> findings inform that issue,

7    although he does not elaborate how.  Moreover, while conceding he does not allege Pippin threatened

8    any witness in his own underlying criminal prosecution, Genzler does allege that during times relevant

9    to this case "Mr. Pippin attempted to intimidate and coerce his direct report, DDA Rebecca Blair-

10   Harutunian, so as to force her into abandoning her endeavors to have discoverable information

11   provided to Genzler's defense team."  Opp. 2:13-22.  Genzler also argues the <u>Martin</u> case is relevant

12   because it is anticipated Blair-Harutunian, if asked at trial about "her decision to not bring her

13   discovery of Longanbach and O'Brien's misconduct directly to Mr. Pippin, she will testify she and

14   other DDAs were made aware of the <u>Martin</u> case and were advised when first joining the office "that

15   if they had any questions about ethics, that they should avoid going to Mr. Pippin."  <u>Id.</u> 2:25-3:4.  He

16   contends her knowledge of "what Mr. Pippin did in the <u>Martin</u> case as well as her general knowledge

17   of Mr. Pippin and his reputation" were factors affecting her decisions on a course of conduct with

18   respect to the Genzler matter.  <u>Id.</u> 3:4-6.  On those bases, he argues he should not be precluded from

19   referencing the <u>Martin</u> case on cross-examination of Pippin.

20        The Motion is **CONDITIONALLY GRANTED**.  The court does not see the relevance to this

21   case of the facts of the <u>Martin</u> case, although knowledge of the case in the office could inform Blair-

22   Harutunian's decision not to go to Pippen.  The court will revisit the latter issue, but only if the context

23   at trial makes it a relevant inquiry.

24        **21.   MIL No. 21:  To Exclude Opinion Testimony And Other Evidence By
             Arthur Brodshatzer Regarding Peter Longanbach's Honesty**

25

26        Defendants move for an Order to prohibit Arthur Brodshatzer from testifying regarding his

     opinion of Longanbach's "character for honesty," relying on Rules 404, 602, 608, and 701 (relevance,

27

     competence/lack of personal knowledge, and prejudice).  Defendants contend Brodshatzer, an

28

     accountant who was employed by the defense as an expert witness in an unrelated case prosecuted by

                                        - 28 -

1   Longanbach, formed his opinion that Longanbach was dishonest and unethical after a single meeting

2   with him.  They argue Brodshatzer is not competent to opine about Longanbach's professional ethics

3   because he lacks the necessary foundation of sufficient knowledge of the other witness' character or

4   reputation.  MIL 2:14-3:7, citing cases from the DC Circuit and the Second Circuit requiring that in

5   order to offer reputation evidence under Rule 608(a), the character witness must demonstrate

6   qualifications to do so based on acquaintance with the witness, the witness' community, and the circles

7   in which the witness has moved.  They contend "the Court may exercise its discretion to allow plaintiff

8   to cross-examine Mr. Longanbach about his meeting with Mr. Brodshatzer; however, Mr. Brodshatzer

9   may not offer direct evidence of alleged prior bad acts on the part of Mr. Longanbach," warranting

10  exclusion of Brodshatzer's testimony and evidence about his meeting with Longanbach as extrinsic.

11  Id. 3:11-22.

12      Finally, Defendants  represent the meeting between Brodshatzer and Longanbach occurred in

13  1998, after the Genzler prosecution and in no way connected to it.  They argue exclusion of this

14  evidence is proper as "unfairly prejudicial," serving only "to divert the jury's attention from material

15  issues in the case."  MIL 3:26-28.  The evidence is also "irrelevant" with respect to "whether

16  defendants knew of and ratified Longanbach's alleged subornation of perjury in the Genzler case."

17  Id.4:1-4.  They accordingly seek to prohibit Brodshatzer's testimony regarding his meeting with

18  Longanbach and his opinion of Longanbach's "character" for honesty.

19      Genzler opposes the motion on grounds the evidence is not offered to show Longanbach acted

20  in conformity with character.  Rather, he intends to offer the evidence to show "Mr. Pfingst's conduct

21  and attitudes towards complaints of misconduct."  Opp. 3:1-2.  He also argues the evidence is relevant

22  and not "unduly" prejudicial because "[o]ne of the primary issues in this case is what the Defendants

23  did and/or did not do in their administrative capacities," and "[e]vidence of preferential treatment and

24  failures to investigate scurrilous accusations of misconduct are central to that issue."  Id. 3:5-11.

25      The Motion is **GRANTED**.  Complaints about Longanbach that do not involve allegedly

26  putting people up to lying are not relevant here, and under Rule 403, such evidence is properly

27  excluded.

28

01CV1462

1  **II.    CONCLUSION AND ORDER**

2          For the foregoing reasons, **IT IS HEREBY ORDERED:**

3          1.     Genzler's four (4) MIL filed August 25, 2006 (Dkt Nos. 182 through 185) are **DENIED**

4  as superseded by his subsequent filing on September 6, 2006 of seven (7) MIL (Dkt Nos. 204-210).

5          2.     Former defendant Longanbach's eleven (11) MIL filed August 25, 2006 (Dkt Nos. 186

6  through 196), in which former defendant O'Brien joined (Dkt No. 199), are **DENIED AS MOOT**, in

7  consideration of the subsequent settlement and dismissal of those two defendants.

8          3.     Genzler's MIL Nos. 3 and 4 are **GRANTED** or **CONDITIONALLY GRANTED**.

9          4.     Genzler's MIL No. 5 is **DENIED.**

10          5.     The court **RESERVES RULING** on Genzler's MIL Nos. 1, 2, 6, and 7.

11          6.     Defendants' MIL Nos. 5, 8, 9, 13, 14, 16, 20, and 21 are **GRANTED** or

12  **CONDITIONALLY GRANTED.**

13          7.     Defendants' MIL Nos. 1, 2, 3, 6, 7, 15, 17, 18, and 19 are **DENIED**.

14          8.     The court **RESERVES RULING** on Defendants' MIL Nos. 4, 10, 11, and 12.

15          **IT IS SO ORDERED**.

16  DATED: _____10-4-06_____          _Lary A. Burns_____

17

18                                                **HONORABLE LARRY ALAN BURNS**
                                                  United States District Judge

19  cc:    MAGISTRATE JUDGE RUBEN B. BROOKS
           ALL COUNSEL OF RECORD

20

21

22

23

24

25

26

27

28

01CV1462